LAW OFFICE
OF
# B. ALAN SEIDLER
580 BROADWAY
NEW YORK, NEW YORK 10012

TELEPHONE
(212) 334-3131
SEIDLERLAW@GMAIL.COM

September 22, 2015

Hon. Leonard D. Wexler
United States District Judge
United States Courthouse
610 Federal Plaza
Central Islip, NY 11722

re: USA v. Gerald
    13 Cr. 141 (LDW)

Dear Judge Wexler;

In response to the presentence report:

Paragraph 3: Gerald denies any gang membership.

Paragraph 5: Gerald denies the Government's crack cocaine estimates in any amount over 1 kilogram.

Paragraph 7: Gerald denies the allegations as to his past possession of firearms.   Paragraphs 3 and 7 are inconsistent. Gerald had no leadership role in the "Bloods."

Paragraph 18: Gerald was not previously informed he was a Career Offender.

Paragraph 30: The petit larceny offense should not be counted because it was 16 years ago.

Paragraph 33: The 1999 false impersonation charge occurred 16 years ago.

Paragraph 34: The 2000, Assault conviction happened 14 years ago.

Paragraph 35: Gerald and the victim knew each other all of their lives, and the victim gave information to Parole and the D.A. stating Gerald was innocent, and the charges were dismissed against Gerald.  There was no curfew imposed on Gerald, and there was no parole violation.

Paragraph 37: Gerald states his proper Criminal History is III

Paragraph 39: Gerald denies all allegations stated.

Paragraph 40: Gerald's brother was shot in the leg.  Gerald denies instructing a person to shoot out of a truck.

Paragraph 41: Gerald denies any role, or knowledge of these retaliation allegations.

Paragraph 48: Gerald denies hand to hand drug activity, or being in possession of crack cocaine.

Paragraph 50: Shavonna Wilds states she received no messages left by US Probation.

Paragraph 53: Gerald's grandfather regularly beat him, and the home was not a loving environment.

Paragraph 55: Gerald's children lived with him, and Shavonna Wilds beginning in 2008, because Angela Sampson lost her home. During that period Gerald still provided income to Ms. Sampson. Aikeyma Gerald still lives with Ms. Wilds.

Defendant believes the law of sentencing to be:

In  Blakely v. Washington, 124 S.Ct. 2531 (2004), the Supreme Court ruled that the Washington State sentencing structure violated the Sixth Amendment right to trial by jury because it permitted a Judge to impose a sentence in excess of the statutory maximum.  The Blakely, supra. decision repeats the rule expressed in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.  The January 12, 2005, Supreme Court decision in USA v. Booker, and USA v. Fanfan, 125 S. Ct. 738 (2005), concluded that the Sixth Amendment as construed in Blakely v. Washington, supra. applies to the Federal Sentencing Guidelines.  The Booker Court held the mandatory application of the sentence guidelines to be unconstitutional.

In Booker, supra. the Supreme Court further held that 18 USC @ 3553(b)(1) which makes the Federal Sentencing Guidelines mandatory,  is incompatible with the Sixth Amendment jury trial holding and therefore must be severed and excised from the Sentencing Reform Act of 1984.  Section 3742(e), which depends upon the Guidelines mandatory nature, also must be severed and excised. While the Guidelines no longer play a mandatory role at sentencing judges are required to "consider the Guidelines' sentencing range established for ... the applicable category of offense committed by the applicable category of defendant' @3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims @@3553(a)(1),(3),(5)-(7) (main ed. And Supp.

2004)." United States v. Booker, 125 S. Ct. 738, 764 (2005).

In sentencing defendants, district courts should consider the factors set forth in 18 USC @ 3553(a). The statute provides that the sentencing "court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and the statute then sets forth 7 specific considerations:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed -

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    C) to protect the public from further crimes of the defendant;

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of services available;

(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

On December 10, 2007, in <u>Kimbrough v. United States</u>, 128 S.Ct. 558 (2007), the United States Supreme Court ruled that the Guidelines are but one factor, with no primacy, that the District Court must consider in its "individualized assessment" regarding sentencing.   The Guidelines are just the "starting point and the initial benchmark" in the sentencing calculus.

A) Gerald is designated Career Offender eligible under the Guidelines because of Criminal History points accumulated between the ages of 17-25; the last of which was acquired almost 15 years ago.

B) Gerald is the birth father of 3 children, ages 20, 17, and 7, and the step father to 12 year old Heaven Wilds.

C) Gerald had a traumatic childhood.  Gerald and his siblings were raised by his maternal Grandparents beginning when Gerald was age 6, and after Gerald and his siblings were found wandering in the street neglected, and then taken under the care of Child Protective Services.  Gerald's Grandparents also cared for 6 of defendant's cousins.  Gerald's mother and father never married, and the father was incarcerated several times beginning when Gerald was very young.  Gerald's mother was a drug addict who was murdered, and it was at that point that Gerald spiraled out of control. After the murder, Gerald's mother's boyfriend took up residence at the Grandparent's home, until the boyfriend subsequently admitted killing Gerald's mother.  Because of behavior problems Gerald's

Grandmother had him placed in a group home for 8 months at age 14, with the help of the Suffolk County Department of Social Services. Gerald was diagnosed as "emotionally disturbed" in 1987, after a psychological assessment, and Gerald was ordered to be Home Schooled because of his violent behavior. Gerald's full scale I.Q. was determined to be "80."

   D) Gerald was an alcohol abuser during his late teens to his early 20's. Beginning at age 17 Gerald smoked marijuana every day, all day. Gerald also used cocaine.


   Enclosed are letters and certificates Mr. Castillo requests the Court consider in connection with sentencing.

   Because of the medically privileged and sensitive nature of this submission Castillo requests it be filed UNDER SEAL.



                    Respectfully,


                    B. Alan Seidler

cc: Jamel Gerald

bas/ee