```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

     -against-                          ORDER
                                        No. 13-CR-0141 (JS)
JAMEL GERALD,

          Defendant.

----------------------------------X
```

APPEARANCES

For Defendant:       Jamel Gerald, Pro Se
                     Reg. No. 81958-053
                     FCI Petersburg Medium
                     Federal Correctional Institution
                     Inmate Mail/Parcels
                     P.O. Box 1000
                     Petersburgh, Virginia  23804

For United States:   John J. Durham, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     610 Federal Plaza
                     Central Islip, New York  11722

SEYBERT, District Judge:

Currently before the Court is the pro se motion of Defendant Jamel Gerald ("Defendant") seeking compassionate release in the form of a sentence reduction (hereafter, the "Motion"). (See Motion, ECF No. 53; see also Reply, ECF No. 57.) The Government opposes the Motion. (See Opp'n, ECF No. 54.) For the following reasons, the Motion is **DENIED**.[1]

---

[1] Recently, Defendant has also requested appointment of counsel to "overlook" his case and "let [him] know what's going on"

## RELEVANT BACKGROUND

I. Defendant's Underlying Conviction

The Court assumes the parties' familiarity with Defendant's conviction. By way of general background: Defendant was a member of the East Coast Gangsta Bloods set of the Bloods criminal street gang (hereafter, the "Gang"), who had authority in the Gang to direct other Gang members. (See Motion at 2.) He was a major supplier of crack cocaine who sold the illegal drug primarily to street dealers. (See id.) Defendant was arrested on February 12, 2013. (See at 3.) A one-count indictment was brought against Defendant on March 6, 2013, charging him with conspiracy to possess with intent to distribute 280 grams or more of cocaine base. (See id. at 2.) On April 4, 2014, Defendant pled guilty to the one-count charge of the indictment. (See id. at 3-4; see also Plea Hr'g Min. Entry, ECF No. 37; Plea Form, ECF No. 38.)

---

(hereafter, the "Appoint Motion"). (ECF No. 60.) "The Court denies Defendant's Appoint Motion. '[A] defendant has no right to the assistance of counsel in filing a motion for compassionate release . . . .'" United States v. Yong, No. 95-CR-0825, 2024 WL 3648259, at *5 (E.D.N.Y. Aug. 5, 2024) (quoting United States v. Fleming, 5 F.4th 189, 193 (2d Cir. 2021)); see also United States v. Manso-Zamora, 991 F.3d 694, 696 (6th Cir. 2021) ("[E]very federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings."). "In any event, Defendant's submissions show he is well-able to present his arguments in support of his Motion, which is fully briefed, and he does not require assistance in advancing said Motion." Id.

In preparing its Presentencing Report ("PSR") (see ECF No. 48 (sealed)), the Probation Department determined Defendant's applicable Guidelines range was 262 to 327 months' imprisonment. (See PSR ¶ 80.)  After considering the parties' respective responses to the PSR,[2] on January 20, 2016, the Court sentence Defendant to, inter alia, 192 months of imprisonment; he will be subject to five years of supervised release.[3]  (See id. at 4; see also Sent'g Hr'g Min. Entry, ECF No. 50; Judgment, ECF No. 51.) In sentencing Defendant, the Court "imposed a sentence otherwise outside the sentencing guideline system (i.e., a variance)" which was below the Guidelines range.  (See Statement of Reasons, ECF No. 52 (sealed), Sections IV(D), VI(A).)  Further, in addition to considering the applicable Section 35534(a) Sentencing Factors (see id., Section VI(C)), the Court stated it:

> sentenced the [D]efendant only as to the conduct to which [he] pleaded guilty to, as outlined in the Plea Agreement dated 4/4/2014 and in Part A of the Presentence Investigation Report prepared on 4/24/2015.  Other conduct mentioned in the Government's Sentencing Memorandum dated 1/19/2016, which the defendant did not plead guilty to, was not considered when the sentence was imposed.

(Id., Section VIII.)

---

[2]  At his sentencing hearing, Defendant withdrew his objections to the PSR.  (See Sent'g Hr'g Tr., Ex. 1, ECF No. 54-1, attached to Opp'n.)  The Court adopted the PSR.  (See id. at 14.)

[3]  The sentencing judge was Honorable Leonard D. Wexler.  This case was reassigned to the undersigned on January 3, 2023.

Defendant is currently serving his sentence at the medium security Federal Correctional Institute in Petersburg, Virginia;[4] he has an anticipated release date of June 28, 2026. See Fed. Bureau of Prisons ("BOP"): Find an Inmate, Jamel Gerald (BOP Reg. No. 81958-053), https://www.bop.gov/inmateloc/ (last visited Nov. 5, 2024) (identifying Defendant's location as "Petersburg Medium FCI").

## II. Relevant Procedural History

On December 27, 2022, Defendant moved for compassionate release.[5] (See Motion.)  His main argument in support of his Motion is that, because he suffers from hypertension, he is at greater risk of harm if he contracts COVID-19.  (See, e.g., id. at 12, 16.)  He also argues: he was erroneously designated a career offender (see id. at 18-19); with limited clarity, that the weight of the drugs involved should be reconsidered (see id. at 20-22); and, his sentence should be reduced to avoid sentencing disparity (see id. at 22-25).  Further, in a perfunctory manner, Defendant addresses the Section 3553(a) Sentencing Factors, asserting a reduced sentence of 120 months' incarceration "is sufficient, but

---

[4] When he moved for compassionate release, Defendant was housed in FCI Ray Brook, a federal correctional institution located in Ray Brook, New York.  (See Motion Transmittal Letter, ECF No. 53 at 1; see also Motion at 8-9.)

[5] Defendant's Motion is hand-dated December 22, 2022, but was received by the Clerk's Office on December 27, 2022, the date it was filed in this case.

not greater than necessary" to act as a deterrent, protect the public, and foster respect for the law.  (Id. at 26.)

In opposition, the Government first contends this Court cannot act upon Defendant's Motion because he has not complied with the statutorily mandated exhaustion requirements.  (Opp'n at 3-5.)  As to the purported extraordinary and compelling reasons advanced by Defendant, the Government discounts them.  First, it argues Defendant has been vaccinated against COVID-19.  (See id. at 5.)  Second, the Government maintains that, at the time of his sentencing, Defendant was properly designated a career offender based upon his prior New York state felony drug sales convictions; it is irrelevant that, if sentenced today, Defendant would not be so designated since "nonretroactive sentencing statutes cannot contribute to a finding of extraordinary and compelling reasons warranting compassionate release."  (Id. at 7; see also id. at 8.)  Third, as to the weight of drugs involved, the Government contends Defendant: "misunderstands the law of relevant conduct"; "Probation correctly held [Defendant] accountable for the full quantity of cocaine base that he distributed during the charged conspiracy"; and, Defendant did not object to the Probation Department's weight determination.  (Id. at 8.)  Finally, as to the Section 3553(a) Sentencing Factors, the Government argues their consideration outweigh any extraordinary and compelling reason warranting compassionate release.  (See id. at 8-9.)  It

also highlights Defendant has sustained 15 disciplinary violations, including five assaults, which incarcerated conduct counsels against early release.  (See id. at 9.)

Defendant's Motion is ripe for decision.

## DISCUSSION

### I. Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)).  The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A); see also United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020).  "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction."  United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing

United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)).  "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, i.e., a motion for compassionate release]."  United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)).  And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements."  Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72-73).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the First Step Act, courts are not restricted to the Sentencing Commission's applicable policy statements, but may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020); see also Keitt, 21 F.4th at 71 ("A court deciding a compassionate release motion can consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it].'" (alteration in original) (quoting Brooker, 976 F.3d at 237)).  Indeed, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone

shall not be considered an extraordinary and compelling reason.'" Brooker, 976 F.3d at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also United States v. Ambrosio, 541 F. Supp. 3d 253, 254 (E.D.N.Y. 2021) (same). "Additionally, district courts may consider 'intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.'" United States v. Monteleone, No. 92-CR-0351, 2023 WL 2857559, at *2 (E.D.N.Y. Apr. 10, 2023) (quoting Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022)).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [Sentencing F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [Sentencing F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted); see also United States v. Jones, No. 22-2008-CR, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same). "The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370,

at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).

II. Application

A. Exhaustion

Defendant baldly contends he filed a compassionate release request with the Warden at FCI Ray Brook[6] and 30 days have lapsed from that request without his having received a response thereto.  (See Motion at 8-9; see also Reply at 3 (repeating same).)  The Government refutes Defendant's claim asserting, according to BOP "legal counsel, there is no record of the [D]efendant making such a request to the Warden or to the BOP." (Opp'n at 3.)  "Accordingly, the Motion is not ripe and must be denied."  (Id.)  The Court agrees.

Here, notwithstanding his claim of administrative exhaustion, defendant "provides no documentation or specific information regarding any submissions made to the BOP.  According to the Government, the BOP has not received any requests from [Defendant]."  United States v. Delacruz Santana, No. 16-CR-0337,

---

[6] At the time Defendant filed his Motion, he was housed in FCI Ray Brook, a medium security federal correctional institution located in Ray Brook, New York.  Therefore, Defendant was required to present his request to the Warden of that facility.  See 18 U.S.C. § 3582(c)(1)(A)(i).

2024 WL 4449443, at *4 (E.D.N.Y. Oct. 2, 2024). Like the Delacruz Santana Court, this Court finds, upon the present record, it "cannot ascertain that [Defendant] has exhausted his administrative remedies" and, therefore, "he has not satisfied the exhaustion requirement." Id. Hence, as this Court has previously ruled, "defendant's failure to exhaust administrative remedies is a threshold matter preventing the Court from considering a Section 3582 application." United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020); see also United States v. Messina, No. 11-CR-0031, 2024 WL 2853119, at *4 (E.D.N.Y. June 4, 2024) (stating the "exhaustion requirement is a case processing rule, not a jurisdictional limitation" (citing United States v. Saladino, 7 F.4th 120, 121 (2d Cir. 2021)). "As such, the [C]ourt DENIES [Defendant]'s compassionate release [M]otion on this independent basis. For the reasons discussed below, even if this [C]ourt were to waive the exhaustion requirement,[7] [Defendant] is not eligible for compassionate release." Delacruz Santana, 2024 WL 4449443, at *4.

    B.    <u>Defendant has Failed to Establish the Existence of Extraordinary and Compelling Circumstances</u>

Defendant is currently 49 years old and asks the Court to consider he suffers from (1) hypertension, (2) gastroesophageal

---

[7] Upon the record before it, "[t]he [C]ourt also finds that no exceptional circumstances exist warranting waiver of the statutory exhaustion requirement. Delacruz Santana, 2024 WL 4449443, at *4.

reflux disease, (3) joint pain, and (4) skin, eye, and dental problems, which he asserts makes him more vulnerable to COVID-19. (See Motion at 9, 11; see also id. at 12 ("Gerald is particularly vulnerable to COVID-19 because of his hypertension.").) The Court is unpersuaded.

"Since the decline of COVID-19 cases and proliferation of vaccines, courts in this Circuit have generally rejected compassionate release motions based on the threat posed by the virus, asserting that 'the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors.'" United States v. Johnson, 671 F. Supp. 3d 265, 280 (E.D.N.Y. 2023) (quoting United States v. Oquendo, No. 13-CR-0357, 2023 WL 199609, at *4 (S.D.N.Y. Jan. 17, 2023)) (emphasis added); see also Delacruz Santana, 2024 WL 4449443, at *6 ("[T]he mere possibility that [Defendant], who has medical issues, may contract COVID-19 is not enough." (collecting cases)). "In evaluating whether an individual's current risk from the pandemic warrants compassionate release, courts have examined their vaccine status, the COVID-19 situation at their specific correctional facility, and whether their co-morbidities are being managed." Id. (citations omitted). Further, as to COVID-19 variants, such variants are "considered less severe in causing illness and death." Mayes v. United States, No. 12-CR-0385, 2023 WL 22632, at *4 (E.D.N.Y. Jan. 3, 2023).

Defendant does not deny he has been fully vaccinated. (Compare Opp'n at 5, with Reply, in toto.)  Additionally, there is no indication FCI Petersburg, where Defendant is currently housed, is facing Pandemic-related exigent circumstances requiring its use of BOP COVID-19 Operational Levels.  Compare BOP FCI Ray Brook Home Page, available at https://www.bop.gov/locations/institutions/rbk/ (page not providing COVID-19 operating level information) (last visited Nov. 4, 2024), with BOP COVID-10 Modified Operations Plan & Matrix, available at https://www3.bop.gov/coronavirus/covid19_modified_operations_guide.jsp ("provid[ing] a general overview about BOP COVID-19 Operation Levels: how they are determined, how operations are affected, and related resources") (last visited Nov. 4, 2024). Indeed, as this Court recently stated, "in considering the COVID-19 situation at [a federal correctional facility], one must recognize that the COVID-19 Public Health Emergency ended on May 11, 2023." United States v. Wagner, No. 17-CR-0106, 2024 WL 2801981, at *5 (E.D.N.Y. May 31, 2024) (citing U.S. Dep't Health & Human Servs., Fact Sheet: End of the COVID-19 Public Health Emergency, available at https://hhs.gov/about/news/2023/05/09/fact-sheet-end-of-the-covid-19-public-health-emergency.html).  "Therefore, it is no longer necessary for the BOP to engage in across-the-board special operations."  Id.  Hence, in Wagner, the Court presumed the BOP

had returned to operating its federal correctional facilities "without COVID-19-related precautions", which rendered the inmate-defendant's COVID-19-related argument "of little weight." Id. (citing Jones, 17 F.4th at 375 (confinement in facility "where [COVID-19] counts are currently low" was not "extraordinary and compelling" circumstance)). The same holds true here; more than "three years into the pandemic, 'the Court finds that the risks that were heightened at the onset of the pandemic have largely been reduced or been under control . . . .'" United States v. Gonzales, No. 15-CR-6085, 2023 WL 6386139, at *3 (W.D.N.Y. Oct. 2, 2023) (quoting United States v. Malloy, No. 07-CR-0898, 2023 WL 2237504, at *4 (S.D.N.Y. Feb. 27, 2023)); see also Inmate COVID-19 Data, BOP, available at https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (reporting zero open cases of COVID-19 at FCI Petersburg) (last visited Nov. 5, 2024).

Moreover, there is no indication Defendant's hypertension and other identified medical conditions are not well-controlled with medication and necessary medical care provided by FCI Petersburg. Nor is there anything in the record showing Defendant is not fully ambulatory and engaging in all normal activities of daily living. Upon such a wanting record, Defendant has failed to show that his medical conditions "so incapacitate him as to warrant a reduction of his sentence."

United States v. Lisi, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("BOP's guidance, read in conjunction with the Application Notes to § 1B1.13 [of the U.S. Sentencing Guidelines], indicate that a defendant's medical condition must be one of substantial severity and irremediability, and [defendant] has not shown that he suffers from such conditions."); see also United States v. Brown, No. 12-CR-0120, 2024 WL 1639926, at *2 (E.D.N.Y. Apr. 16, 2024) (denying compassionate release where defendant "d[id] not allege that his health conditions—hypertension, high cholesterol, and unspecified 'other conditions'—[we]re terminal, diminish[ed] his ability to provide self-care, or require[d] long-term or specialized care that [wa]s not being provided at" the federal correctional facility where he was housed); United States v. Mohammed, Nos. 18-CR-0509, 20-CR-0581, 2024 WL 2701639, at *2-3 (E.D.N.Y. May 18, 2024) (denying compassionate release where defendant failed to meet the U.S.S.G. § 1B1.13(b)(1), i.e., "Medical Circumstances", criteria); see also generally Oquendo, 2023 WL 199609, at *4 ("This Court continues to align itself with those courts that have found 'that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease.'" (quoting United States v. Nwankwo, No. 12-CR-0031, 2020 WL 2490044, at *1-2

(S.D.N.Y. May 14, 2020) (collecting cases))); United States v. Jones, No. 02-CR-0778, 2020 WL 7640944, at *3 (E.D. Pa. Dec. 23, 2020) ("[C]ourts have found that high blood pressure is not an extraordinary and compelling reason for an inmate's release." (collecting cases)).  Nor does the Defendant offer any meaningful reply to refute the Government's contentions in this regard.  (See Reply at 3.)

To the extent Defendant raises Guidelines-based arguments, i.e., arguments based upon his career-offender status and the relevant drug-weight calculation, to establish extraordinary and compelling reasons for his early release, the Court is unconvinced.  While Defendant is correct that a change in law may be considered as a basis for a sentence reduction (see Reply at 3-4); see also Keitt, 21 F.4th at 71; see generally United States v. Vasquez, No. 96-CR-1044, -- F. Supp. 3d --, 2024 WL 2385264, at *3 (E.D.N.Y. May 23, 2024), as the Government aptly asserts, "even if the [D]efendant was not a career offender", he was properly held "accountable for the full quantity of cocaine base that he distributed during the charged conspiracy," and to which amount he did not object.  (Opp'n at 8.)  According to the Government, "his offense level would be 36 while his Criminal History Category would be V, resulting in a Guidelines range of 210 to 262 months."  (Id.)  Yet, the sentencing Court imposed a downward variance sentence of 192 months' imprisonment, which, as

the Government underscores, is "18 months lower than the Guidelines if the [D]efendant was not a career offender" and "48 months less than Probation's recommended sentence." (Id.) This is not the type of unusually long sentence contemplated by § 1B1.13 (b)(6) of the Guidelines. Cf., Vasquez, 2024 WL 2385264, at *4 ("Section 1B1.13(b)(6) provides that if a defendant received an unusually long sentence and has served at least ten years of his term of imprisonment, a change in the law 'may be considered in determining whether the defendant presents an extraordinary and compelling reason' only when 'such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.'" (emphasis added)). Rather, having fully considered "[D]efendant's individualized circumstances", U.S.S.G. § 1B1.13(b)(6), the Court's 192-months-sentence was not "an unusually long sentence"; thus, Defendant has not shown the imposed sentence warrants compassionate release.

    C.    The Section 3553(a) Factors

"[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [Sentencing F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'" Jones, 2023 WL 8613867, at *2; see also Jones, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actors'

is 'an alternative and independent basis for denial of compassionate release.'" (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(1)-(2).

Johnson, 671 F. Supp. 3d at 283.

Defendant has not meaningfully addressed the Section 3553(a) Sentencing Factors.  (See Motion at 26; Reply at 4.)  Nor does the Court find anything before it that would change the original analysis of those Factors.  Rather, in its discretion, the Court finds, even if Defendant had presented extraordinary and compelling circumstances warranting compassionate release, which he has not, the Section 3553(a) Sentencing Factors would override those circumstances.  The Court's below-Guidelines, variant 192-months sentence of imprisonment continues to be appropriate to, inter alia: promote respect for the law;[8] reflect the

---

[8] The Court's consideration of this factor includes consideration of Defendant's numerous disciplinary violations while incarcerated

seriousness of the offense; provide just punishment; adequately deter criminal conduct; and protect the public from the Defendant, thereby satisfying the applicable Section 3553(a) Sentencing Factors.  (Cf. Statement of Reasons, Part VI(C).)

Furthermore, the Government opines: "While [Defendant's] criminal conduct standing alone is serious, [his] membership in the Bloods is an aggravating factor that makes the instant offense even more serious."  (Opp'n at 9.)  The Court concurs.  This Court has repeatedly observed in gang-related cases:  "[G]ang members need to know their violent, illegal activities are intolerable, and those who choose to join gangs need to know they will be prosecuted, sentenced to substantial sentences, and required to serve those sentences."  United States v. Lake, No. 14-CR-0264, 2023 WL 8810620, at *6 (E.D.N.Y. Dec. 20, 2023); Wagner, No. 17-CR-0106, 2024 WL 2801981, at *8 (quoting Lake).  It is no different here.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Compassionate Release Motion (ECF No. 53) is **DENIED** in its entirety without prejudice;

---

(see Opp'n at 9), which Defendant did not refute (see Reply, in toto).

**IT IS FURTHER ORDERED** that Defendant's Appoint Motion (ECF No. 60) is **DENIED;** and

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the Defendant at his current address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: November 6, 2024
       Central Islip, New York